IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS A. OLMEDA,

Plaintiff

v.                                                    CIVIL 12-1894 (JA)

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

Defendant

OPINION AND ORDER

I. PROCEDURAL BACKGROUND

On October 26, 2012, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied his application for a period of disability and Social Security disability insurance benefits. (Docket No. 1). He had filed an application for benefits on October 28, 2010 alleging disability due to sleep apnea, depression, severe high blood pressure, a back injury, and early stages of post traumatic stress disorder (PTSD). (Tr. at 237-39).

Pursuant to 42 U.S.C. § 405(g), the court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record. See 42 U.S.C. § 405(g). In reviewing a Social Security decision, the factual findings of the Commissioner shall be conclusive if supported by "substantial evidence" in the record. See Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)). "Substantial evidence" is more than a "mere scintilla," see Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971), in other words, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

CIVIL NO. 12-1894 (JA)                    2

See id.; also see Currier v. Sec'y of Health & Human Servs., 612 F.2d 594, 597 (1st Cir. 1980);  Taylor v. Astrue, 899 F. Supp. 2d 83, 85 (D. Mass. 2012).  In reaching the final decision, it is the Commissioner's responsibility to determine issues of credibility and to draw inferences from the evidence in the record.  See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Plaintiff has the burden of proving that he has become disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287 (1987); Rivera-Tufino v. Commissioner of Social Sec., 731 F. Supp. 2d 210, 212-13 (D.P.R. 2010).  A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months.  See 42 U.S.C. § 416(i)(1).  In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits.  There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986). Partial disability does not qualify a claimant for benefits.  See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole.  In order to be entitled to such benefits, plaintiff must establish that he was disabled under the Act at any time on or before June 28, 2012, the date of the Commissioner's final decision.  Plaintiff continues to meet the  earnings requirements for disability benefits under the Social Security Act

CIVIL NO. 12-1894 (JA)                3

until December 31, 2016 but not after that date.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

After evaluating the evidence of record, Administrative Law Judge Harold Granville entered the following findings on June 28, 2012:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
2.  The claimant has not engage in substantial gainful activity since July 1, 2010, the alleged disability onset date (20 CFR 404.1571 et seq.).
3.  The claimant has the following severe impairments: cervical and lumbar  degenerative disc disease, sleep apnea, high blood pressure, depression and post-traumatic stress disorder (20 CFR 404.1520(c)).
4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that he has to avoid skilled and semiskillled functions.  He is capable of unskilled work avoiding environmental hazards and not dealing with the public.
6.  The claimant is unable to perform his past relevant work (20 CFR 404.1565).
7.  The claimant was born on September 1, 1966 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
9.  Transferability of skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2010 through the date of this decision. (20 CFR  404.1520(g)).

Tr. at 13-22.

CIVIL NO. 12-1894 (JA)                    4

The administrative law judge ended the sequential inquiry at step five. At this level, it has already been determined that the claimant cannot perform any work he has performed in the past due to a severe impairment or combination of impairments.   The inquiry requires a consideration of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work.  If the claimant cannot, a finding of disability will follow.  See 20 C.F.R. § 404.1520(f).  At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy which plaintiff can perform given the above factors.  See Freeman v. Barnhart, 274 F.2d 605, 608 (1st Cir. 2001);  Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lancelotta v. Secretary of Health & Human Servs., 806 F.2d 284 (1st Cir. 1986); Vázquez v. Secretary of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982); Tassel v. Astrue, 882 F. Supp. 2d 143, 146 (D. Me. 2012);  Rodriguez-Gonzalez v. Astrue, 854 F. Supp. 2d 176, 180 (D.P.R. 2012).

Plaintiff asked the  Appeals Council to review the final decision.  The Appeals Council denied such a request on September 1, 2012. (Tr. at 1-3).

II. ARGUMENT

On July 16, 2013, plaintiff  filed a memorandum of law in the present case seeking reversal of the final decision. (Docket No. 19).   Defendant filed a memorandum in support of the final decision on August 15, 2013 (Docket No. 20). Plaintiff argues in his memorandum of law that the administrative law judge deployed the incorrect legal standard in reaching the final decision, disregarding his own examining psychiatric consultant's report, as well as failing to ask the vocational expert the correct hypothetical questions at the administrative hearing. The administrative law judge is also charged with not explaining the weight given

CIVIL NO. 12-1894 (JA)                    5

to each medical opinion, and not giving good reasons for the weight accorded to a treating source's opinion, without which a reviewing court, such as this one, cannot assess whether the final decision is supported by substantial evidence.  See e.g. Vazquez-Rivera v. Commissioner of Social Sec., 943 F. Supp. 2d 300, 310 (D.P.R. 2013), citing Polanco-Quinones v. Astrue, 477 Fed. Appx. 745, 746 (1st Cir. 2012); 20 C.F.R. § 404.1527(d)(2);  also see Hernandez v. Commissioner of Social Sec., ___F. Supp. 2d ___, 2013 WL 5674498 (Oct. 17, 2013) at *7.

       The defendant argues to the contrary, adding that plaintiff has focused on the final decision relating to the mental residual functional capacity and does not  take issue with the administrative law judge's assessment of plaintiff's physical residual functional capacity.  The defendant argues that the administrative law judge's findings as to mental residual functional capacity are well supported by the opinions of experts in Social Security evaluations, and other detailed evidence of record. Similarly, the testimony of the vocational expert at the administrative hearing also lends support to that final decision.

### III. ADMINISTRATIVE PROCEEDINGS

       At the administrative hearing held in Mayaguez, Puerto Rico on June 13, 2012, plaintiff was well represented  by attorney Arlene Diaz.  Plaintiff testified that his medical  conditions  began  during  active  military  duty  when  he  hurt  his  back, resulting in numbness down his left leg.  He also experiences depressive and anxiety episodes and he described irregular sleeping habits.  He is treated on a monthly basis by Dr. Japhet Gaztambide Montes, psychiatrist, in Mayaguez whom he has gone to for a second opinion. (Tr. at 32).  He receives treatment for a lumbar condition at the Veterans Hospital roughly every two months, by Dr. Olga

CIVIL NO. 12-1894 (JA)                    6

Maldonado. (Tr. at 32-33).    He experiences sharp jabs while walking four or five times a week, and takes medication daily. The pain varies in intensity.

Plaintiff stated that his Military Occupational Specialty in the Army was 11 Charlie, which is heavy infantry, and he was in a mortar unit.  He was also 11 Bravo, light infantry.  He also worked in the telephone company in an administrative position attending the public, customer service representative. Plaintiff had difficulties adjusting to his civilian occupation when he returned from active duty, even as a cashier. (Tr. at 35).  He could not handle costumer contact.  While he has strength in his arms, his back bothers him. (Tr. at 36). He has sleep apnea and sleeps with a machine that suffocates him and does not deliver sufficient air to his brain.  He sleeps during the day because the medication he takes makes him drowsy.  He generally does not drive to do shopping or to the mall because his wife does that.  The Veterans Administration awarded him a 90% disability pension.

Dr. Marieva Puig, vocational expert, summarized plaintiff's previous job as an infantryman which involves a lot of physical effort.   She was asked to consider the requirements of the previous employment for a person limited to light and unskilled work, which does not require the risk of environmental dangers, such as heights, driving vehicles, moving machinery, and does not have contact with the public.  (Tr. at 41).  The expert then said that there existed jobs in Puerto Rico that could be performed under these hypotheses, such as labeler, inspector (missing parts), and classifier.  Counsel asked if assuming back pain and the need to shift positions, the vocational expert stated that plaintiff would be out of the labor force. (Tr. at 44). If he cannot maintain concentration for more than an hour, he would also be out of the workforce.  (Tr. at 44-5).  Counsel ended his participation in the hearing with a comprehensive argument related to evidence of record.  Tr. at 45-8).

CIVIL NO. 12-1894 (JA)                    7

IV. MEDICAL HISTORY

Plaintiff suffered from back pain and high blood pressure while in military training in 2009.  He was first treated conservatively for the physical ailment but received prescription medication for both.  He returned from deployment with back pain on July 1, 2010.  X-rays revealed disc narrowing and end plate osteophytes in the mid and lower thoracic spine, and mild osteophyte formation in the cervical spine.  He was placed on military medical hold that month.  X-rays taken in August and December 2010 revealed stable degenerative changes at the C2-C3 and C3-C4 levels, and osteophyte formation at L4-L5 vertebra. (Tr. at 751).  Plaintiff received physical therapy.  He also received treatment for a mental condition apparently triggered by a traumatic episode, seeing a severed head at the sight of a burned out schoolhouse, suffered while on active duty in Djibouti, where he was stationed from August 2009 to June 2010.  He also went to sick call sometimes because of back pain.     Indeed plaintiff has an extensive treatment from the Veterans Administration, primarily for depression but also for sleep disorder and back pain.

On August 16, 2011, plaintiff was evaluated by the consulting examining psychiatrist Dr. Juan G. Batista. The doctor  found plaintiff anxious and depressed. Immediate, recent and remote memory were adequate. Short-term memory was not. The doctor found adequate judgment, diminished attention, ability to conduct simple calculations and of average intelligence.    The diagnosis was "AXIS I: 296.34", which in the DSM-IV-TR is severe major depression with psychotic features.  Also diagnosed was post-traumatic stress disorder (PTSD). (Tr. at 655-58).  Dr. Zaida Boria, the consulting neurologist, evaluated plaintiff on September 14, 2011.  She found plaintiff to be alert, and fully oriented.  He was coherent and relevant.  A diagnosis of chronic lumbar musculoskeletal pain was made, with

CIVIL NO. 12-1894 (JA)                    8

restrictions of range of movement.  She noted that plaintiff could sit, stand, walk and travel, as well as handle and lift common objects. (Tr. at 662-70).  There were no strength limitations of the lower extremities and no hand limitations.  Plaintiff was 6'5" tall and weighed 217 at the time.  Gait was normal.

Dr. Japhet Gaztambide Montes was plaintiff's treating psychiatrist from January 26, 2011 to March 28, 2012.  On the first evaluation and subsequent ones, he diagnosed "AXIS I: 296.33" which in the DSM-IV is defined as major depression, recurrent, severe without psychotic features.  (Tr. at 1076, 1080, 1085).  The doctor issued a mental residual functional capacity assessment of total disability lasting over a year, that is from January, 2011 to March, 2012. (Tr. at 124-28).

The administrative law judge noted in his rationale that notwithstanding the constant back pain, such pain responded to medications and plaintiff was stabilized when emergency room treatment was needed.  (Tr. at 19).  He determined that the back pain did not significantly interfere with the activities of daily living.  Within the list of medications taken for the back pain were Naproxen and Flexeril, both common NSAIDs, as well as Motrin, Toradol, Robaxin (methocarbamol-muscle relaxer), Lodine and Norflex.  (Tr. at 303).   To help plaintiff with sleeping he was prescribed Ambien, and later Buspar (anxiety).  As to the mental condition, and specifically depression, the administrative law judge noted that plaintiff responded to treatment for depression, anxiety, and incipient post-traumatic stress disorder and that the medications he had been taking since 2009 had remained unchanged. Those medications included Abilify (depression), Klonopin, Zoloft (depression) and Trazodone.   Plaintiff also took blood pressure medication, such as Lisinopril, Metropolol tartrate, Norvasc, and Hydrochlorothiazide. (Tr. at 549-51). The Global Assessment of Functioning (GAF) revealed moderate symptoms.  Dr. Roberto

CIVIL NO. 12-1894 (JA)                    9

Gutierrez of the First Hospital Panamericano noted a discharge GAF of 60-65 on February 24, 2012. (Tr. at 98, 116, 1078).  According to the Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR), a GAF between 61 and 70 indicates some mild symptoms, but generally functioning well.  A GAF of between 51 and 60 indicates moderate symptoms.  Plaintiff generally exhibited a GAF in this range.  (Tr. at 82, 114, 498).  The diagnosis upon discharge at First Hospital Panamericano was AXIS I: 296.33, major depression, recurrent, severe without psychotic features.  Treatment for depression continued through the year 2012.

V. REPORTS OF CONSULTATIVE AND TREATING PHYSICIANS

Plaintiff argues that the administrative law judge did not give proper weight to the treating physicians' medical reports. The administrative law judge gave controlling weight to the (comprehensive) VA medical records in relation to the thoracic and lumbar conditions, and plaintiff's responsiveness to treatment.  The consultant psychiatrist, Dr. Juan G. Batista who evaluated plaintiff on August 16, 2011 was given great weight and credibility.  Great weight and credibility were also given to Dr. Zaida Boria, consultant neurologist, who evaluated plaintiff on a consultative basis on September 14, 2011.  (Tr. at 662-70).

On the other hand, no weight was given to the treating physician, Dr. Japhet Gaztambide Montes.  The period of treatment was from January 26, 2011 to March 28, 2012. (Tr. at 119-28).  Dr. Gaztambide Montes agreed in part with Dr. Batista's conclusion but opined that plaintiff's depression impeded work at all levels, and imposed marked restrictions for activities of daily living, extreme difficulties in maintaining social functioning, and extreme deficiencies of concentration, persistence, and pace.  (Tr. at 1086-90).   Because the administrative law judge

CIVIL NO. 12-1894 (JA)                    10

found that the conclusions are not supported by the evidence of record, he disagreed. (Tr. at 20).    The administrative law judge specifically considered and rejected the mental residual functional capacity assessments from Dr. Gaztambide Montes, which basically concludes plaintiff is disabled for all practical purposes. (Tr. at 124-28, 1072-80, 1081-90).

It is well settled that even the opinions of treating physicians are not entitled to greater weight merely because they are treating physicians.  Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Pérez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1, 2 (1st Cir. 1980); Mercado v. Commissioner of Social Sec., 767 F. Supp. 2d 278, 285 (D.P.R. 2010); Delgado-Quiles v. Comm'r. of Social Sec., 381 F. Supp. 2d 5, 8-9 (D.P.R. 2005);  Rosado-Lebrón v. Comm'r of Social Sec., 193 F. Supp. 2d 415, 417 (D.P.R. 2002).  In disagreeing with the treating psychiatrist's assessment, the administrative law judge relied to a great extent on the extensive and detailed Army medical records including Djibouti theater medical records as well as the similarly detailed VA medical records. (Tr. at 339-96, 397-479, 655-59, 662-71, 749-983, 984-1050).    He also relied on the reports of Dr. Juan G. Batista and Dr. Zaida Boria.  While the administrative law judge does not detail specifically where in the roughly 500 pages relied upon in this extensive record (1,090 pages), there is supporting evidence for his rejecting Dr. Gaztambide Montes's conclusions.  Aside from reliance on Dr. Batista's assessment,  a review of the medical records encompassing the time period of January 26, 2011 to March 28, 2012 reveals support for a mental residual functional capacity assessment which is not as completely limiting as that made by Dr. Gaztambide Montes, including observations made by Dr. Batista.  These include records from the Rodriguez Army Health Clinic

CIVIL NO. 12-1894 (JA)                    11

in Fort Buchanan, Puerto Rico and Dwight D. Eisenhower Army Medical Center in Fort Gordon, Georgia.  Indeed, there are no evaluations in the lengthy record which approach the degree of severity attributed by Dr. Gaztambide Montes, whose reports are internally inconsistent.   A prior report of Dr. Gaztambide Montes within the evaluation period reflects a milder mental condition than a latter report including the same period.  On February 26, 2011, Dr. Gaztambide Montes found plaintiff to be of average intelligence, oriented in person, time and place, with recent, remote and immediate memory intact. (Tr. at 113, 1075).   Also, Dr. Gaztambide did not classify plaintiff as obese when he clearly was, as reflected by his constantly being overweight as reflected in his medical records, and being referred to a nutritional specialist. (Tr. at 663, 1031, 1038, 1082).  However, plaintiff was also described as well built. (Tr. at 501).   Apparently plaintiff weighed 240 pounds in late 2010, according to his wife. (Tr. at 292).  The record reveals an average weight of 215 lbs although in mid 2009 he weighed 210 pounds. (Tr. at 380, 501).

Controlling weight may be granted when the opinion of the treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §404.1527(d).  The opinion of such a treating physician can be rejected if it is inconsistent with other substantial evidence in the record.  See 20 C.F.R. § 404.1527(c); cf. Rivera v. Astrue, 814 F. Supp. 2d 30, 37-38 (D. Mass. 2011).   The weighing of such inconsistencies is a function delegated to the administrative law judge, not to the court on judicial review.     Thus, the administrative law judge was not required to give the opinion of Dr. Gaztambide Montes controlling weight.  See 20 C.F.R. § 404.1527(d); Berríos-Vélez v. Barnhart, 402 F. Supp. 2d 386, 391 (D.P.R. 2005); cf. Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221 (D.P.R. 2003).  In this case, the administrative law judge

CIVIL NO. 12-1894 (JA)                12

stated that he gave no weight to Dr. Gaztambide Montes' reports, although the administrative law judge relies to a great extent on the assessments of Dr. Boria and Dr. Batista (great weight and credibility).  (Trat 19-20).  Yet, the administrative law judge must "always give good reasons" for the weight accorded to a treating source's opinion.  See Pagan-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210-11 (D.P.R. 2009).

Plaintiff takes issue with the lack of "good reasons" for not giving controlling weight to the treating psychiatrist's assessment.  However, the administrative law judge relies on a comprehensive, longitudinal record of plaintiff's treatment to the point where the VA health professionals detail the percentage of the plaintiff's visit which is dedicated to counseling.  (Tr. at 129-42, 343, 341, 372, 604, 775, 900-01, 919, 1007-08, 1040, 1048).  The administrative law judge noted that while Dr. Gaztambide Montes concurred in the diagnosis of recurrent severe major depressive disorder, he stated that plaintiff's restrictions impeded the performance of work at all levels, and imposed marked restrictions for activities of daily living, extreme difficulties in maintaining social functioning, and extreme deficiencies of concentration, persistence and pace.  (Tr. at 1072-80, 1081-90).  The administrative law judge noted that this "clinic picture" is not supported by the evidence of record.  (Tr. at 20).  Generally, the more consistent an opinion is with the record as a whole, the more weight is given to it. 20 C.F.R. § 404.1527 (c)(4); also see SSR 96-2p; Bouvier v. Astrue, 923 F. Supp. 2d 336, 347-48 (D.R.I., 2013). The antithesis is also true.

Plaintiff was hospitalized for depression at the First Hospital Panamericano from February 24 to March 12, 2012 and his condition was determined to have improved by the time of his discharge, although the diagnosis was recurrent severe

CIVIL NO. 12-1894 (JA)                              13

major depression.  An X-ray dated May 9, 2011 showed curvature of the thoracic spine favoring mild levoscoliosis, as well as thoracic spondylosis.  Marginal osteophytes were present. (Tr. at 679).  A back MRI dated July 21, 2011 revealed degenerative spondylosis, degenerative disk disease at T11-T12 and bulges at L4-L5 and L5-S1.  (Tr. at 1021).  Earlier X-rays revealed degenerative changes of the cervical vertebra and osteophyte formation on the superior end plates of the anterior L4-L5 vertebra.  But even more importantly, the progress notes of record reveal a constancy of treatment and an unchanged continuation of medications since 2009.  Plaintiff argues that this constancy reflects a lack of improvement if anything.  Plaintiff received primary care treatment at the VA and was never hospitalized there.  His visits were frequent, at times weekly. The long term goal at the VA was to eliminate his depression.  Regular follow-up visits were always scheduled. Plaintiff took his medication regularly.  The back condition was constant but most of the time considered mild or moderate, although the pain was originally at the higher end of the pain spectrum.  Plaintiff required emergency room treatment three times between February 2011 and February 2012. (Tr. at 74, 88, 90, 95, 104).

## VI. MEDICAL-VOCATIONAL GUIDELINES (GRID)

In relation to plaintiff's residual functional capacity, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines, known as the GRID, is appropriate.  If the applicant's limitations are exclusively exertional, then the Commissioner can meet the burden through the use of a chart contained in the Social Security regulations.   20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3

CIVIL NO. 12-1894 (JA)                      14

(2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). If the facts of the applicant's situation fit within the GRID's categories, the GRID "directs a conclusion as to whether the individual is or is not disabled."  20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969.  However, if the applicant has non-exertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)), that restrict his or her ability to perform jobs he would otherwise be capable of performing, then the GRID is only a "framework to guide [the] decision." 20 C.F.R. § 416.969a(d) (2001); Seavey v. Barnhart, 276 F.3d 1, 5 (1ˢᵗ Cir. 2001); Sanchez-Ortiz v. Commissioner of Social Sec., ___F. Supp. 2d ___, 2014 WL 494872 (D.P.R. Feb. 7, 2014) at *7-*8.

## VI: HYPOTHETICAL QUESTIONS

Aside from reliance on the GRID, the administrative law judge also relied on the testimony of a vocational expert which assisted him in translating medical evidence of physical and mental limitations into functional terms.  Presented with factors related to plaintiff's mental residual functional capacity assessment, as well as physical limitations,  in the questioning of the administrative law judge, the vocational expert determined that there were jobs plaintiff could perform given of a light, unskilled nature, and which did no expose plaintiff to environmental hazards and which did not expose him to the public.   The administrative law judge asked one hypothetical question assuming levels of exertional and non-exertional limitations. (Tr. at 41). The administrative law judge asked a hypothetical question the inputs into which must correspond to conclusions that are supported by the outputs of the medical authorities.  Arocho v. Sec'y of Health & Human Services, 670 F.2d 374, 375 (1ˢᵗ Cir. 1982).  "Nevertheless, '"the [administrative law judge]

CIVIL NO. 12-1894 (JA)                    15

is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible."' <u>Simila v. Astrue</u>, 573 F.3d 503, 521 (7th Cir. 2009) (quoting <u>Schmidt v. Astrue</u>, 496 F.3d 833, 846 (7th Cir. 2007)." <u>Mercado v. Commissioner of Social Sec</u>., 2013 WL 5315763 (D.P.R. Sep. 20, 2013) at *5. Plaintiff takes issue with the failure of the administrative law judge to have asked certain questions related to his limitations.  This argument always is cause for pausing because of the non-adversarial nature of these proceedings and a claimant's right to a full and fair hearing.   See <u>Bermontiz-Hernandez v. Commissioner of Social Sec.</u>, 2013 WL 149640 (D.P.R. Jan. 14, 2013) at *10. However, plaintiff was well represented by counsel at the hearing, as reflected by the questioning of the vocational expert by plaintiff's representative, and as reflected in the argument presented to the administrative law judge at the end of the hearing, which included directing the administrative law judge to the reasons why plaintiff was sent to the Global War on Terrorism Warrior in Transition Program at Eisenhower Clinical Center at Ft. Gordon, Georgia and later at Ft. Buchanan, Puerto Rico, and the results of such treatment. (Tr. at 43-44, 45-48).  Plaintiff's representative added what she considered the missing part of the only hypothetical question  and the vocational expert was candid in responding to that question as well as to the others.

## VII. CONCLUSION

The final decision that plaintiff has the residual functional capacity to perform light  work as defined in 20 CFR 404.1567(b), except for work involving skilled and semiskilled functions, limited to avoiding environmental hazards and not dealing with the public, is based on the review of an extensive and detailed medical record and reflects a reasonable balancing and weighing of evidence and the making of

CIVIL NO. 12-1894 (JA)                    16

credibility determinations (Tr. at 19, 20) by the administrative law judge.  See Gray v. Heckler, 760 F.2d 369, 374 (1st Cir. 1985); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir. 1982); Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d at 222.   In that weighing, the power to resolve conflicts in the evidence lies with the Commissioner, not the courts.  Id.; see Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).  The rationale of the administrative law judge is sufficiently detailed, and a reasonable weighing of the evidence does not point to the Commissioner's finding plaintiff to be disabled under the Social Security Act.  Thus, the court must affirm the decision, whether or not another conclusion is possible.  See Ortiz v. Sec'y of Health & Human Svcs., 955 F.2d at 769; Suarez-Linares v. Commissioner of Social Sec., 962 F. Supp. 2d 372, 379 (D.P.R. 2013).   For example, even if I, on review, were to have given controlling weight to the treating psychiatrist, Dr. Japhet Gaztambide Montes, the final decision would be affirmed.

          In view of the above, and there being no good cause to remand based upon a violation of the substantial evidence rule, the final decision of the Commissioner is affirmed and that this action is dismissed.  The Clerk will enter judgment accordingly.

          At San Juan, Puerto Rico, this 15th day of April, 2014.


                                        S/ JUSTO ARENAS
                                        United States Magistrate Judge